[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-14634
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 12, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00488-CV-BH-B

ROBERT CALLAHAN, et al.,

Plaintiffs,

H. E. SCOBEE,
DOROTHY SCOBEE,
HANK PERKINS,
PAULA PERKINS,

Plaintiffs-Counter-Defendants-Appellees,

versus

POINT CLEAR HOLDINGS, INC.,

Defendant-Counter-Claimant-Appellant,

ROBERT AND GINGER CALLAHAN,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(August 12, 2009)

Before TJOFLAT and ANDERSON, Circuit Judges, and WOOD,[*] District Judge.

ANDERSON, Circuit Judge:

Appellant Point Clear Holdings, Inc. ("PCH") appeals from the district court's grant of summary judgment to Appellees H.E. Scobee, Dorothy Scobee, Hank Perkins, and Paula Perkins (collectively "the Lot Owners"). The dispute in this case centers on controlling the use of Pine Grove Drive, a street in Point Clear, Alabama. PCH owns Pine Grove Drive, and the Lot Owners have a private easement for a street in Pine Grove Drive. The district court's summary judgment order severely limited PCH's ability to use Pine Grove Drive and to grant rights of use in Pine Grove Drive to persons other than the Lot Owners. After oral argument and careful consideration, we reverse the district court's conclusions of law and vacate its "findings of fact."

## I. FACTS

This case centers around the use and control of a street, Pine Grove Drive, located in Point Clear, Alabama. Pine Grove Drive is the sole access street for a subdivision, Unit Two, of a residential development, Lakewood Club Estates ("Lakewood"). Lakewood is adjacent to a resort hotel, the Grand Hotel.

---

[*] Honorable Lisa Godbey Wood, United States District Judge for the Southern District of Georgia, sitting by designation.

Lakewood surrounds a golf course and tennis complex developed for the Grand

Hotel. Unit Two, of which Pine Grove Drive is a part, is bound by a set of

restrictive covenants filed by Grand Hotel Development Corporation ("GHDC"),

the original developer of the Grand Hotel, Lakewood, and Unit Two of Lakewood.

The most relevant portions of the restrictive covenants provide as follows:[1]

> A-7. Easements. The easements shown on the plat of said subdivision are hereby adopted as a part of these restrictions, and all lots in said subdivision shall be subject to said easements. Grand Hotel reserves unto itself, its successors and assigns, the right to grant unto others easements to install, maintain, repair and construct power, water gas and telephone lines and facilities and drainage ditches, in, on, over and under the areas, or any of the areas designated on said plat as "private easement" or "planting strip" or "planting area."

> A-8. Street Easements. The street easements shown on the plat of the subdivision have been designated as private easements for streets and are for the use and benefit of the owner of any lot in the subdivision or Grand Hotel, and guests, invitees and employees of the owner of any lot in the subdivision or Grand Hotel, and other members of the public who have business to conduct with the owner of any lot in the subdivision, or Grand Hotel; and Grand Hotel reserves the right at any time to dedicate said streets to the public, but neither the recording of a plat nor any other act of Grand Hotel shall be construed as a dedication of said streets to the public unless Grand Hotel shall execute and record in the Probate Court of Baldwin County, Alabama, a right of way deed or other documents conveying to the proper authority an easement for the benefit of the public in said streets.

> C-1. Term. These covenants, restrictions and limitations shall run with the land and shall be binding on all parties and persons claiming under them until January 1, 1985, at which time said covenants shall be automatically

---

[1] "Grand Hotel" as used within the restrictive covenants refers to GHDC.

extended for successive periods of ten (10) years, unless by a vote of a majority of the then owners of the lots it is agreed to change said covenants in whole or in part.

The reference to "street easements" that are "designated as private easements for streets" in paragraph A-8 is a reference to Pine Grove Drive as shown by the subdivision plat. Thus, according to the terms of the restrictive covenants paragraph A-8, Pine Grove Drive is designated as a private easement for a street. On the original plat, Pine Grove Drive intersected with one other Lakewood street on its western end and was intersected in the middle by an existing road which provides access to U.S. Highway 98. On its eastern end, Pine Grove Drive is shown on the plat as extending to the end of the plat, with the adjoining land to the east belonging to the developer. Since the development of Unit Two, Pine Grove Drive has actually been connected at its eastern end to another Lakewood street, with a security gate at that end.

PCH is the successor in interest to GHDC and is the current owner and operator of the Grand Hotel. PCH owns Pine Grove Drive. The Lot Owners are a group of persons who own residential lots within Unit Two. This dispute arose between PCH and the Lot Owners when the Lot Owners became aware that PCH planned to be involved in a condominium development project on land near Lakewood known as the "Pate property." After the filing of this suit, PCH's plan

4

evolved to a larger, mixed-use development project called "the Colony at the Grand" ("the Colony"). The Colony development project would include the Pate property and other property located inside and outside of Lakewood, and would include a mixture of high- and low-density residential development and commercial development. PCH planned to grant a right-of-way over Pine Grove Drive to the Pate property or the Colony residents. The proposal to the zoning authority revealed the plan that Pine Grove Drive would be one of several means of access for Pate property or Colony residents (but not a primary one).

The Lot Owners, who use Pine Grove Drive as the sole means of access to their lots, enacted an amendment to paragraph A-8 of the restrictive covenants governing Unit Two to limit PCH's future use of Pine Grove Drive.[2] The Lot Owners then brought suit against PCH seeking declaratory judgment that PCH had only limited use rights in Pine Grove Drive, that PCH could not use Pine Grove Drive in connection with any property development outside of the property owned by GHDC at the time that Unit Two was created, and that PCH could not dedicate Pine Grove Drive to the public. PCH brought a counterclaim, seeking a declaration that the Lot Owners' attempted amendment of paragraph A-8 of the restrictive covenants was invalid. The Lot Owners filed a dispositive motion for summary

---

[2] The content of the attempted amendment is discussed below as part of our analysis.

5

judgment. PCH filed a motion for partial summary judgment (to declare invalid the Lot Owners' attempted amendment). The district court granted the Lot Owners' motion for summary judgment, and denied PCH's motion.[3] PCH has appealed.

## II. STANDARD OF REVIEW

We review the district court's order granting summary judgment <u>de novo</u>. <u>Shuford v. Fidelity Nat'l Prop. & Cas. Ins. Co.</u>, 508 F.3d 1337, 1341 (11th Cir. 2007). "We apply the same legal standards that bound the district court and view all facts and reasonable inferences in the light most favorable to the nonmoving party." <u>Id.</u>

## III. DISCUSSION

The Lot Owners and PCH agree that PCH owns Pine Grove Drive and that the Lot Owners have an easement in Pine Grove Drive. We will first analyze the easement, therefore, to determine the rights and obligations of each party. <u>Blalock v. Conzelman</u>, 751 So. 2d 2, 6 (Ala. 1999) ("[T]he existence of the easement creates mutual rights and obligations."). We will then analyze both of the district court's major conclusions of law in turn, as well as its "findings of fact."

A. <u>The Character of the Pine Grove Drive Easement</u>

Pine Grove Drive is an express easement created by the restrictive covenants

---

[3] The district court denied PCH's motion in all respects except in one minor particular.

filed by GHDC with the plat of Unit Two. The covenants state in paragraph A-8

that "[t]he street easements shown on the plat of the subdivision have been

designated as private easements for streets. . . ." Thus, the covenants expressly

grant an easement for a "street," i.e. a right-of-way. Under the terms of the

easement grant, both the Lot Owners and PCH (as the successor in interest to

GHDC) have the right to use Pine Grove Drive because the covenants state that the

easements are "for the use and benefit of the owner of any lot in the subdivision or

Grand Hotel . . . ."[4] Furthermore, Alabama law regarding easements maintains the

right of the landowner to use the land burdened by the easement, "so long as such

right does not conflict with the purpose and character of the easement." Duke v.

Pine Crest Homes, Inc., 358 So. 2d 148, 150 (Ala. 1978).

In order to determine the scope of PCH's right to use Pine Grove Drive,

therefore, we must determine the "purpose and character" of Pine Grove Drive.

The Lot Owners argue that PCH's ability to use Pine Grove Drive is sharply

limited because the easement is for a "private street." The district court agreed

with the Lot Owners' argument regarding the character and purpose of the

easement, relying on the history of the creation and use of Pine Grove Drive. The

---

[4] Because "Grand Hotel" as used in the restrictive covenants refers to the then developer (GHDC), and because PCH is the successor in interest to GHDC, the document expressly provides a right to use the right-of-way for both the Lot Owners and PCH.

assertion that Pine Grove Drive has a "private" character and purpose is incorrect, however, for several reasons. First, the phrase "private street" does not appear in the covenants. Rather, the grant is for "private easements for streets." "The extent of a servitude is determined by the terms of the grant creating it. Where an easement is founded on a grant, only those interests expressed therein and necessary for its reasonable and proper enjoyment pass from the owner of the fee." Duke, 358 So. 2d at 150 (quoting Keeler v. Haky, 325 P.2d 648 (Cal. Ct. App. 1958)) (internal punctuation omitted). Nothing more than a right-of-way can be read into the language creating the easement. The language of the covenants also makes clear that the Lot Owners have only a nonexclusive right-of-way interest in Pine Grove Drive when it states that the easements are for the "use and benefit of . . . Grand Hotel, and guests, invitees and employees of . . . Grand Hotel, and other members of the public who have business to conduct with . . . Grand Hotel; and Grand Hotel reserves the right at any time to dedicate said streets to the public." Thus, the only interest granted to the Lot Owners was an easement for a street, i.e. a nonexclusive right-of-way by which the Lot Owners may access their lots. Indeed, the Lot Owners' argument in favor of exclusive rights is flatly inconsistent with the clear language of the grant which expressly reserves to the developer the

8

right at any time to dedicate the street to the public.[5]

Second, the Alabama cases have rejected similar claims of exclusive rights. In Duke, the Supreme Court of Alabama held: "It is well settled in Alabama that the owner of the servient estate may himself use the land upon which an easement has been dedicated so long as such right does not conflict with the purpose and character of the easement." 358 So. 2d at 150. In rejecting the claim of exclusive right by the holder of the easement, the court noted that the concept of an exclusive easement was an unusual interest in land, and would be tantamount to the grant of a fee simple. Id. at 150-51. Thus, the court in Duke rejected a claim of exclusive rights, even in the absence of any express reservation. In our case, in which there is an express reservation inconsistent with the grant of any exclusive right, we can even more readily reject the Lot Owners' claim.

Third, the surrounding circumstances of the easement's creation and the history of use, on which the district court relied in finding that the purpose and character of Pine Grove Drive were for a "private street," are irrelevant for purposes of this particular issue;[6] that is, the language here clearly creates for the

---

[5] Although the district court held that the reservation of the right to dedicate the street to the public did not devolve to PCH, we demonstrate below that the district court's holding was erroneous.

[6] Because the circumstances surrounding the creation of the easement and its historic use are irrelevant, we need not decide if the district court's "finding" was clear error. However, we

Lot Owners merely a nonexclusive right-of-way easement, leaving in PCH a fee simple ownership subject only to a requirement that its use not conflict with the Lot Owners' nonexclusive right-of-way. While a court will look to the facts and circumstances surrounding the creation of restrictive covenants if the covenants are ambiguous, see Fouts v. Beall, 518 So. 2d 1236, 1239 (Ala. 1987), the easement in Pine Grove Drive created by the covenants here is perfectly clear. "If the language of the conveyance is clear and free from doubt, such language is not the subject of interpretation." Weeks v. Wolf Creek Indus., Inc., 941 So. 2d 263, 270 (Ala. 2006) (internal punctuation omitted). The character and purpose of the easement granted to the Lot Owners was, by its express terms, a nonexclusive right-of-way, and the history of use has not changed the easement's purpose or character. "[T]he easement holder can not change its character, or materially increase the burden upon the servient estate." Blalock, 751 So. 2d at 6 (internal punctuation omitted) (rejecting argument by easement holders that twenty-four years of pruning trees on a right-of-way easement changed the express easement for a right-of-way to include a right to the trees).

Accordingly, PCH may make any use of Pine Grove Drive that would not

note that the district court's "finding" is hotly contested by PCH, and the evidence certainly does not favor the interpretation advocated by the Lot Owners.

10

conflict with the purpose and character of the Lot Owners' nonexclusive right-of-way easement. Blalock, 751 So. 2d at 6 ("[N]either party can prevent the other from using the easement in a manner consistent with the purposes for which the easement was created."). We turn now to analyzing the district court's conclusions of law, and its "findings of fact."

B. Dedication to the Public

The district court concluded that PCH did not have the right to dedicate Pine Grove Drive to the public. The district court based this conclusion on its interpretation of paragraphs A-7 and A-8 of the restrictive covenants, noting that:

> In paragraph A-7, reserving the right to grant easements for utilities, GHDC specifically reserved to itself and its successors and assigns the right to grant such easements. However, in the very next paragraph of the covenants GHDC reserved only to itself, and not to its successors and assigns, the right to dedicate the private street to the public.

Using the rule in Alabama that restrictive covenants must be construed against the developer, see Schmidt v. Ladner Constr. Co., 370 So. 2d 970, 973 (Ala. 1979), the district court held that the silence in paragraph A-8 as to successors and assigns meant that the rights reserved in paragraph A-8 for GHDC were personal to GHDC and did not pass to GHDC's successors and assigns. The district court concluded that PCH, as the successor in interest to GHDC, did not therefore have the right to dedicate Pine Grove Drive to the public. This conclusion is erroneous for three

11

reasons.

First, the restrictive covenants at issue contain another relevant paragraph, paragraph C-1, which expressly provides that "[t]hese covenants, restrictions and limitations shall run with the land and shall be binding on all parties and persons claiming under them . . . ." Black's Law Dictionary defines the term "covenant running with the land" as follows: "A covenant that, because it relates to the land, binds successor grantees indefinitely. ● The land cannot be conveyed without the covenant." Black's Law Dictionary 393 (8th ed. 2004). Based on the plain language of the covenants, therefore, it is absolutely clear that the covenants run with the land and bind successors and assigns. "The paramount factor in determining whether a covenant is one running with the land is the intent of the parties. In determining this a court first looks to the instrument . . . ." Allen v. Axford, 231 So. 2d 122, 128 (Ala. 1969) (internal citations omitted). Thus, there is no ambiguity as to whether the rights reserved to GHDC under the covenants flow to its successors and assigns. The reserved right to dedicate the streets of Unit Two to the public devolves to successors and assigns. PCH is the successor to GHDC, and thus has the right to dedicate Pine Grove Drive to the public. The use of a rule of construction to hold otherwise, in the face of the clearly expressed intent in paragraph C-1, was erroneous.

Second, it is undisputed that PCH owns Pine Grove Drive. Under Alabama law, covenants generally run with the land. See Budget Inn of Daphne, Inc. v. City of Daphne, 789 So. 2d 154, 159 (Ala. 2000) ("Nonpossessory property rights such as covenants and easements are said to 'run with the land,' becoming an incident of ownership, and they are generally not personal."). Therefore, even without paragraph C-1 of the restrictive covenants, the reservation of the right to dedicate Pine Grove Drive to the public would not have been personal to GHDC, but would have passed to PCH as the owner under the general rule that covenants "run with the land" and are an "incident of ownership."

Third, as discussed above, the express easement to the Lot Owners was only an easement for a nonexclusive right-of-way. The dedication of Pine Grove Drive to the public would not interfere with the Lot Owners' use of Pine Grove Drive as a right-of-way. Therefore, there is no merit in the Lot Owners' argument that the right to dedicate Pine Grove Drive to the public was void for conflicting with the grant of their easement. Accordingly, we conclude that PCH may dedicate Pine Grove Drive to the public under the terms of the restrictive covenants governing Unit Two in paragraphs A-8 and C-1 and also as a matter of Alabama law.

C. PCH's Use of Pine Grove Drive

The district court also held that PCH could neither use nor grant rights of use

13

in Pine Grove Drive in connection with property outside of Unit Two. The district court relied on two conclusions to reach its result, both of which are erroneous.

First, the district court concluded that PCH could not extend the use of Pine Grove Drive to property outside of Unit Two because Alabama law prohibits the extension of an easement to property acquired after the easement has been created. See, e.g., Weeks, 941 So. 2d at 272. As the Lot Owners concede, however, this rule is applied to easement holders in the Alabama case law. The Lot Owners have pointed to no holdings in Alabama that the owner of the servient estate cannot use his or her property in connection with other, later acquired property. To the contrary, the law of Alabama is clear that PCH may "use the land upon which an easement has been dedicated so long as such right does not conflict with the purpose and character of the easement." Duke, 358 So. 2d at 150. Therefore, it was error for the district court to limit PCH's ability to use or grant rights of use in Pine Grove Drive by reference to what property GHDC owned at the time that Unit Two was created.

Second, the district court concluded that PCH could not use or grant rights of use in Pine Grove Drive in connection with the Pate property or other new developments associated with the Colony development project, including property within Lakewood, because such use would conflict with the purpose and character

14

of Pine Grove Drive. The district court's conclusion relies on three erroneous determinations. First, the district court relied on its conclusion that the purpose and character of Pine Grove Drive are those of a "private street." As we discussed above, however, the purpose and character of Pine Grove Drive are those of a nonexclusive right-of-way which PCH may dedicate to the public. Second, the district court "found" that Pine Grove Drive was a dead end street when developed, and that it is still technically a dead end street, notwithstanding its connection to another street and the placement of a gate at its end. PCH, however, contends that Pine Grove Drive was never intended to be a dead end street, and has pointed to evidence in the record to support its contention, including the fact that Pine Grove Drive is shown on the original plat of Unit Two as ending in a straight line at the edge of the property. Third, the district court also "found" that "[a]lthough the exact proportion of the nearly 4,000 [for the proposed Pate property development] to 9,000 [for the proposed Colony development] trips generated daily by the developments that would involve travel on Pine Grove Drive is not known, given the contemplated integration of the properties and facilities of PCH and PCP [another developer involved] as reflected in Exh. 8, 9, 10, and 11, it is reasonable to infer that the use of Pine Grove Drive would be exponentially increased if use thereof is permitted in connection with the development." Again, PCH has

15

contested the inference that an "exponential" amount of traffic would be routed down Pine Grove Drive, and has pointed to evidence in the record to support PCH's version of the facts. Because both of these "factual findings" by the district court – i.e. the dead end character and the exponential increase in traffic – were contested, and because neither is supported by the record evidence, they were not appropriate determinations for the district court to make at summary judgment. Accordingly, we vacate both of these "factual findings." Thus, neither can provide support for the district court's determination that using Pine Grove Drive in connection with the Pate property or Colony development would violate the purpose and character of the easement.

It was error for the district court to broadly limit PCH's ability to use or grant rights in Pine Grove Drive. The limit that the Alabama law of easements imposes on PCH is that its use of Pine Grove Drive must not "conflict with the purpose and character of the easement." Duke, 358 So. 2d at 150. The purpose and character of Pine Grove Drive, as explained above, are for a nonexclusive right-of-way. The record does not support a finding that the use of Pine Grove Drive in connection with the Pate property or the Colony development would conflict with a nonexclusive right-of-way. In general, an increase in traffic alone does not increase the burden on an estate. Weeks, 941 So. 2d at 272-3 (analyzing

16

the question of whether an increase in traffic by an easement holder overburdens the easement).  In order to conflict with a nonexclusive right-of-way, the traffic created by PCH would have to impede the Lot Owners' ability to access their lots via Pine Grove Drive.  The evidence in the record falls far short of rising to the level of conflicting with the Lot Owners' nonexclusive right-of-way.  Thus, there is nothing in the summary judgment record to suggest that PCH's proposed plans of development would conflict with the purpose and character of the easement.

Our resolution of this case is, of course, based on Alabama law.  However, it also comports with common experience and fair play. See Restatement (Third) of Prop.: Servitudes § 4.9 cmt. e ("Creation of additional servitudes. Under the rule stated in this section, the holder of the servient estate may create additional servitudes in land burdened by a servitude if the additional servitudes do not unreasonably interfere with the enjoyment of the prior servitude holders.").  As previously noted, the plat of Unit Two filed by GHDC shows Pine Grove Drive's eastern end as terminating in a straight line on the edge of the property, with property owned by the developer on the other side.  This indication on the map, plus the express reservation of the right to dedicate Pine Grove Drive to the public, was such that the Lot Owners were on notice that they might anticipate future development surrounding the resort complex, as approved by the relevant zoning

17

authorities; and on notice that they might anticipate public dedication. Therefore, we vacate the district court's "factual findings" regarding the intent and purpose of Pine Grove Drive and the burden that the proposed developments would place on Pine Grove Drive. Furthermore, we conclude that PCH's ability to use Pine Grove Drive is limited by the Lot Owners' easement only to the extent that any such use by PCH must not conflict with the purpose and character of a nonexclusive right-of-way for the Lot Owners.

D. Amendment to the Covenants

Before bringing this legal action, the Lot Owners instituted an amendment to the covenants pursuant to paragraph C-10 of the covenants, which provides:

> C-10. Amendment, Modification and Annulment. Any or all of the covenants and restrictions heretofore provided may be amended, modified, or annulled at any time by an instrument executed by the owner or owners, as the case may be, of seventy-five (75%) percent of the lots of the subdivision, said lots being shown on the plat of the subdivision recorded in Map Book 5, Page 198, of the records in the office of the Probate Judge of Baldwin Count, Alabama; PROVIDED, HOWEVER, no amendment which places an additional burden or restriction on lots in said subdivision shall bind any lot, the owner of which does not join in said amendment.

The Lot Owners' amendment substantially altered paragraph A-8. Amended paragraph A-8 explicitly creates an exclusive easement in Pine Grove Drive for the Lot Owners. The amendment allows only "bona fide employees" of PCH to use

18

Pine Grove Drive, and does not maintain PCH's ability to dedicate Pine Grove

Drive to the public. PCH did not agree to the Lot Owners' amendment. PCH

brought a counterclaim seeking to have the amended paragraph A-8 invalidated.

The district court rejected (in all but a minor particular) PCH's motion for summary

judgment on its counterclaim. PCH has asked this Court to invalidate the Lot

Owners' attempted amendment.

Applying Alabama law on the construction of restrictive covenants, we

conclude that amended paragraph A-8 is invalid. Restrictive covenants are to be

construed strictly and against restraints on the free use of land. Bear v. Bernstein,

36 So. 2d 483, 484 (Ala. 1948). Paragraph C-10 distinguishes between general

amendments and amendments that create additional burdens or restrictions by

imposing the additional requirement of consent of the affected owner on

amendments adding burdens to an owner's property. However, the amendment

provision with respect to additional burdens or restrictions explicitly addresses

only further burdens or restrictions which are created on "lots." Pine Grove Drive

and the other property interests retained by PCH are not "lots." Paragraph C-10 is

silent as to the process necessary for applying burdens to property retained by PCH.

Reading paragraph C-10 strictly and construing it against restraints on the free use

of property, we conclude that paragraph C-10 does not allow the instant attempted

19

amendment that creates further burdens on PCH's property without PCH's consent.

We are also persuaded by the fact that Alabama courts have held that even where a restrictive covenant contains a clause that allows a developer to unilaterally amend the covenants, the developer may make only reasonable amendments consistent with the general scheme or plan of development reflected in the covenants because purchasers rely on restrictive covenants when they purchase their property. Wright v. Cypress Shores Dev. Co., Inc., 413 So. 2d 1115, 1124 (Ala. 1982). See also Moore v. Megginson, 416 So. 2d 993, 993 (Ala. 1982) (applying Wright, 413 So. 2d 1115, to uphold a trial court's finding that a developer's exercise of a reserved right to cancel or modify restrictive covenants "must be reasonable, with due regard for the property rights and investments of the persons who relied upon the residential covenants which were in full force at the time of their purchase."); Restatement (Third) of Prop.: Servitudes § 6.10 cmt. f ("[C]ommunity members acting collectively have a duty to treat community members fairly and to exercise discretionary powers reasonably. Those duties apply to the power to amend as well as to other discretionary powers."). The principles underlying the "reasonableness" requirement for amendments to restrictive covenants apply in this case because PCH would have relied in purchasing the Grand Hotel properties on the original version of paragraph A-8,

which clearly retained ownership of Pine Grove Drive for PCH.  Modifying the covenants so as to virtually eliminate PCH's fee simple ownership of Pine Grove Drive without PCH's consent is an unreasonable amendment of the restrictive covenants.  Therefore, under Alabama law, we find the Lot Owners' attempted amendment of paragraph A-8 to be invalid.

## IV. CONCLUSION

For the foregoing reasons, the district court's order granting summary judgment to the Lot Owners is reversed and remanded.  In addition, we hold that PCH's motion for summary judgment on its counterclaim to invalidate the amendment to paragraph A-8 of the restrictive covenants is due to be granted.  Accordingly, we REVERSE and REMAND for further consideration in accordance with this opinion.