[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14903
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-00136-KD-M

JAMES E. HOWINGTON, JR.,

Plaintiff-Appellant,

versus

SMURFIT-STONE CONTAINER CORPORATION/SMURFIT-STONE
CONTAINER CORPORATION PENSION PLAN FOR HOURLY
EMPLOYEES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(May 2, 2014)

Before TJOFLAT, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

James Howington, Jr., appeals the district court's grant of summary judgment to Smurfit-Stone Container Corporation (Smurfit-Stone)/Smurfit-Stone Container Corporation Pension Plan for Hourly Employees (Pension Plan) in his action for wrongful denial of long-term disability benefits, brought under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* The district court granted Smurfit-Stone's motion for summary judgment on the basis that the medical evidence in the record provided "reasonable grounds" to determine that Howington's disability onset date occurred after his last date of active employment with Smurfit-Stone. After a thorough review, we affirm.

## I.

Howington was an hourly employee at Smurfit-Stone's paper mill in Brewton, Alabama until September 27, 2007. While employed, he was enrolled in the Pension Plan for hourly employees. In January 2008, Howington applied for disability benefits with the Social Security Administration (SSA), indicating that he last worked at Smurfit-Stone on October 28, 2007. He was awarded benefits on June 2, 2009. Specifically, the Administrative Law Judge (ALJ) found that Howington "has been under a disability as defined in the Social Security Act since October 28, 2007, the alleged onset date of disability . . . ."

2

Shortly thereafter, in August 2009, Howington applied for long-term disability benefits through the Pension Plan on the basis that he became disabled while working for Smurfit-Stone. The Pension Plan is self-funded and its assets are held in a trust that is funded by irrevocable periodic contributions. Smurfit-Stone is the Plan Administrator and there are no third-party administrators. Because of the manner of funding, Smurfit-Stone uses the SSA's disability decisions, including the disability onset date, to determine whether a claimant became disabled during the claimant's employment term with Smurfit-Stone.

Section 5.16 of the Pension Plan defines disability as follows:

[A] member who becomes disabled while in the active employment of [Smurfit-Stone] shall be deemed to be disabled for purposes of the [Pension Plan] if through an unavoidable cause: (a) he has been disabled by illness or injury so as to be incapable of engaging in any occupation or employment for remuneration or profit; (b) such disability shall have been continued for a period of at least five consecutive months, and (c) the Member has received a federal Social Security Disability award . . . .  For purposes of this Section 5.16, the phrase "active employment" means that on the date of the onset of disability, the Member: (i) was on the active payroll of the Employer; and (ii) was not on a leave of absence . . . .

Smurfit-Stone denied Howington's claim, determining that he had failed to establish his eligibility for benefits because the SSA award set his disability onset date in October 2007, after he left his job. Howington contacted the Pension Plan, explaining that he had mistakenly included the wrong date that he last worked for Smurfit-Stone on his application for social security disability benefits. The

3

Pension Plan's Administrative Committee affirmed the denial of benefits on appeal, but offered to reconsider its decision if Howington provided "a revised Social Security determination stating that he was disabled on September 27, 2007." Howington never obtained a revised decision from the SSA.

Howington then filed suit in district court. Following a bench trial, the court remanded the case to Smurfit-Stone for further investigation as to the onset date of Howington's disability. On remand, Howington provided Smurfit-Stone with letters and medical records from his treating physicians. While Smufit-Stone did not dispute Howington's allegation of clerical error, it reiterated that absent a social security disability award showing that Howington was disabled while actively employed by Smurfit-Stone, he remained ineligible for benefits under the Pension Plan. Howington successfully moved to reopen the action in district court and filed an amended complaint. The parties then filed cross motions for summary judgment. The district court, in turn, granted Smurfit-Stone's motion for summary judgment, concluding that the medical evidence in the record provided a rational basis to determine that Howington's disability onset date did not coincide with his active employment with Smurfit-Stone. The instant appeal followed.

## II.

We review a district court's grant of summary judgment *de novo*, applying the same standards that bound the district court. *Callahan v. Point Clear Holdings,*

*Inc.*, 579 F.3d 1207, 1212 (11th Cir. 2009). ERISA itself does not provide a standard for courts to review the benefits determinations of plan administrators or fiduciaries. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). With *Firestone* and *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008), as guides, however, this Circuit has formulated a multi-step framework for courts reviewing an ERISA plan administrator's benefits decisions:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

5

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).  Under this multi-step framework, the claimant bears the burden of proving that he is disabled and that the administrator's decision was wrong.  *Id.*

III.

In the instant case, the parties agree Smurfit-Stone had discretionary authority to construe the terms of the Pension Plan and determine eligibility for benefits.  Consequently, even assuming, as the district court did, that Smurfit-Stone's decision was in fact "*de novo*" wrong, the dispositive question is whether the district court erred in finding Smurfit-Stone's denial of benefits reasonably supported and not arbitrary and capricious, having taken into account any conflicts of interest.  *Blankenship*, 644 F.3d at 1355.

We conclude that the district court did not so err.  To receive disability benefits from the Pension Plan, Howington had to submit to the Plan Administrator a SSA decision establishing a disability onset date during his term of employment. Howington, however, submitted a SSA determination with a disability onset date of October 28, 2007, approximately one month after he stopped working.  Even after the district court remanded the claim to allow Howington an opportunity to submit additional evidence to show that the disability onset date in his SSA disability award was a "mistake," he still failed to provide any contemporaneous

6

medical evidence to demonstrate that he was disabled while working for Smurfit-Stone. Moreover, there is nothing to suggest that Howington moved to reopen his SSA proceedings to rectify the alleged clerical error in his disability onset date. *See* 20 C.F.R. § 404.988 (permitting a SSA determination to be reopened within twelve months of the date of the notice of the initial determination "for any reason," or within four years of the initial proceeding for "good cause").

The only medical evidence that Howington submitted on remand that coincided with the period of his active employment with Smurfit-Stone was a February 2007 report from Peter Szymoniak, M.D., an orthopedist. In his report, Dr. Szymoniak recommended that Howington be afforded some accommodation as to his foot wear at work and gradually increase his dosage of pain medication, but there is no indication that Howington was unable to work because of his condition.

Howington places great emphasis on a November 2012 letter from his treating psychologist, Robert DeFrancisco, PhD, and a January 2013 letter from Jonathan Southworth, D.O., both of whom opined that Howington was disabled while employed with Smurfit-Stone. But, as the district court fully set out, other medical evidence in the record contradict these letters; and, in fact, Dr. DeFrancisco's letter is inconsistent with his previous conclusion that Howington had limitations only as of October 2007. For example, in November 2008, Dr. DeFrancisco administered a mental examination of Howington and diagnosed pain

7

disorder related to diabetic neuropathy and major depressive disorder.  The report explained that Howington left his job in October 2007 because he was unable to work "due to his pain along with his anxiety and depression."  Dr. DeFrancisco also completed a SSA medical source statement in November 2008.  When asked "if you have sufficient information to form an opinion within a reasonable degree of medical or psychological probability as to past limitations, on what date were the limitations you found above first present[,]" Dr. DeFrancisco answered "Oct '07."

Thus, based on the administrative record available to Smurfit-Stone when it made its decision, *see Blankenship*, 644 F.3d at 1354 (review of benefits denial is limited to consideration of the material available to the administrator at the time it made its decision), we cannot say that Smurfit-Stone's denial of benefits was arbitrary and capricious.

Lastly, although we believe that there is no conflict of interest in this case, we need not make an actual holding in that regard.  Even assuming *arguendo* a conflict of interest, there is no evidence that any conflict of interest influenced Smurfit-Stone's decision to deny benefits in this case.  To the contrary, all the evidence points to a decision supported by the record.

In sum, the district court properly granted Smurfit-Stone's motion for summary judgment because there are "reasonable grounds" in the record to show

8

that Howington's disability onset date occurred in October 2007, after he left his

job with Smurfit-Stone.  *Blankenship*, 644 F.3d at 1355.

**AFFIRMED.**