[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15328
Non-Argument Calendar

_____

D.C. Docket No. 2:12-cv-00838-AKK

DAVID WAYTON,

Plaintiff,

JAMIE COX,
personal representative of the
Estate of David Wayton,

Plaintiff-Appellant,

versus

UNITED MINE WORKERS OF AMERICA
HEALTH AND RETIREMENT FUNDS,

Defendant,

UNITED MINE WORKERS OF AMERICA
1974 PENSION TRUST,

                                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(June 9, 2014)

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Jamie Cox, personal representative for the estate of David Wayton,[1] appeals the district court's grant of summary judgment to United Mine Workers of America 1974 Pension Trust (UMWA) in Wayton's action for wrongful denial of long-term disability benefits, brought under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* Wayton also challenges the court's refusal to grant his motion for a continuance to allow him additional time to conduct discovery. For the reasons that follow, we affirm.

I.

Wayton, a former mine worker, suffered an on-the-job injury on April 10, 1997, that resulted in hip and back issues. Following two surgeries, Wayton

---

[1] Cox replaced Wayton in the instant action after Wayton's death in 2012. For the sake of consistency and clarity, we continue to refer to the Appellant as Wayton.

2

returned to work in January 1998.  Shortly thereafter, however, he was unable to work because of recurrent back pain, and his last day of work was April 22, 1998.  After reporting that his pain was "exquisitely worse in a very severe way," Wayton opted to undergo a repeat laminectomy/discectomy to address his back issues.

Before he could undergo a third back surgery, Wayton visited the hospital on July 20, 2008, complaining of a loss of peripheral vision in his right eye and headaches.  He also reported that he had been experiencing slurred speech with numbness in his tongue starting about two to three weeks prior to his hospital visit.  He was later diagnosed with a "cerebrovascular accident," more commonly known as a stroke.  Thus, he was unable to undergo his scheduled back surgery.  In December 1998, Wayton presented at the hospital complaining of symptoms consistent with a second stroke.  He was later diagnosed with cerebral lesions that likely represented multiples strokes.

In February 1999, Wayton applied for disability benefits with the Social Security Administration (SSA), indicating a disability onset date of April 22, 1998.  The SSA approved his disability claim, finding that Wayton "became disabled under [the SSA] rules on July 1, 1998," and listed Wayton's primary diagnosis as organic mental disorders with a secondary diagnosis of "[l]ate effects of cerebrovascular disease."  Additionally, the SSA determined that Wayton met Listing 12.02, i.e., for organic mental disorders.

3

Wayton then applied for disability benefits through UMWA. Under the terms of the Pension Trust, disability benefits are available to:

> Any Participant who (a) has less than 10 years of signatory service prior to retirement and (b) becomes totally disabled as a result of a mine accident . . . . A Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance [SSDI] Benefits . . . .

The Pension Trust's processing manual provides that a combination of injuries can result in a disability. Specifically, section 612.232 explains that a mining-related injury that is "aggravated or compounded" by a later condition, unrelated to the mine accident, can render a claimant "totally disabled as the result of a mine accident," so long as:

1. The condition which resulted from a mine accident contributed substantially to the total disability;

2. The condition which was not the result of a mine accident was a foreseeable or normal consequence of the condition which was the result of a mine accident; and

3. The existence of the condition which resulted from a mine accident substantially increased the probability that the condition which did not result from a mine accident would occur.

As such, the Pension Trust requires a causal link between a mining accident and the disabling condition. To determine whether this link exists, the Pension Trustees consider, among other things, the applicant's "SSDI determinations and

4

the correlation between the effective date of the SSDI award and the most recent mine accident."

UMWA denied Wayton's claim, determining that he had failed to establish his eligibility for pension benefits because his SSDI award was based on his repeated strokes and was not related to his mining accident. Wayton appealed the denial, but the UMWA Trustees reiterated that Wayton was "not disabled due to the mining accident."

Wayton then filed suit in district court. As relevant to the instant appeal, he filed a motion to compel requesting: "(1) governing documents, including procedure manuals, which were available to the Trustees when Wayton's benefit determination was made; and (2) miners' redacted pensioners files similarly situated to Wayton who were awarded disability benefits." The district court denied Wayton's motion because the court's review was limited to facts in the administrative record, and the request was overly broad and unduly burdensome.

UMWA moved for summary judgment. In response, Wayton filed a Fed.R.Civ.P. 56(f) motion to continue or deny UMWA's summary judgment motion to allow him additional time to complete discovery. The district court, in turn, granted UMWA summary judgment on the basis that Wayton failed to establish that a mining accident caused his disability. Additionally, the court

5

denied Wayton's Rule 56(f) motion for the same reasons it denied his earlier motion to compel.  The instant appeal followed.

## II.

We review a district court's grant of summary judgment *de novo*, applying the same standards that bound the district court.  *Callahan v. Point Clear Holdings, Inc.*, 579 F.3d 1207, 1212 (11th Cir. 2009).  A district court's refusal to grant a continuance of a summary judgment motion in order to conduct discovery is reviewed for an abuse of discretion.  *Burks v. Am. Cast Iron Pipe Co.*, 212 F.3d 1333, 1336 (11th Cir. 2000).

ERISA itself does not provide a standard for courts to review the benefits determinations of plan administrators or fiduciaries.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989).  With *Firestone* and *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008), as guides, however, this Circuit has formulated a multi-step framework for courts reviewing an ERISA plan administrator's benefits decisions:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).  Under this multi-step framework, the claimant bears the burden of proving that he is disabled and that the administrator's decision was wrong.  *Id.*

III.

After review, we conclude that UMWA's decision was *de novo* correct, and thus survives scrutiny under either a *de novo* or arbitrary or capricious standard.  In this case, there is no dispute that Wayton suffered a mining accident and that he was totally disabled.  Under the terms of the Pension Trust, however, Wayton had to show that his mining accident was the cause of his disability, or combined with a later condition to cause his disability.  Wayton failed to meet his burden. Although Wayton applied for SSDI benefits based on his back pain and strokes, the SSA awarded him benefits starting on July 1, 1998, following the onset of symptoms related solely to his cerebrovascular condition.  This was approximately

7

fifteen months after his mining accident in April 1997.  Wayton places great emphasis on the fact that the SSA set his disability onset date as July 1, 1998, which preceded his first hospital visit related to his strokes on July 20, 1998. Wayton, however, fails to acknowledge that by his own admission he started exhibiting stroke-like symptoms weeks before he went to the hospital.  Therefore, the SSA's disability onset date correlates with the onset of his stroke symptoms. *See* SSR 83-20 (noting that relevant factors in determining the disability onset date include a claimant's allegations, work history, and medical and other evidence related to the severity of the impairment).  Moreover, Wayton failed to present any evidence to suggest that his back injury contributed to his stroke symptoms or factored into the SSA's disability determination.

Wayton relies on a November 1, 2000, letter from his treating physician, Dr. Gaylon Rogers, to show that his back condition was substantially responsible for his disability.  Dr. Rogers, however, never rendered such an opinion.  Rather, Dr. Rogers broadly explained that:

> [Wayton's] real issue is about a restriction on obtaining apparently his employer's permanent disability plan and reimbursement due to his injury. . . .  I have explained to him that it seems to me that this is a problem outside of my expertise; however, I certainly, with this note, could validate the fact that he had a significant lumbar spine problem which in all likelihood would have prevented him from returning to work and heavy labor underground regardless of the presence or absence of cardiovascular difficulties.

8

As highlighted by the district court, however, this letter is inconsistent with Dr. Rogers's earlier treatment notes explaining that Wayton intended to undergo additional back surgeries in order to return to work prior to the onset of his strokes. For example, in February 1999, Dr. Gaylon stated that a "proposed spinal stabilization might or might not let [Wayton] return to work in the mines, but as a practical matter, he is not able to pursue that at this point for non work-related medical reasons." Dr. Gaylon also opined that Wayton was at "[maximum medical improvement] status at least for the time being with a 10-20% permanent impairment based on the back problem." As such, Dr. Gaylon seemed to view Wayton's back condition as temporary and anticipated that additional surgeries might have led to further improvement, absent the independent onset of Wayton's cerebrovascular condition in July 1998.

Based on the administrative record available to UMWA when it made its decision, *see Blankenship*, 644 F.3d at 1354 (review of benefits denial is limited to consideration of the material available to the administrator at the time it made its decision), we cannot conclude that UMWA's decision was *de novo* wrong, thus ending our inquiry under our multi-step framework. Accordingly, the district court properly granted UMWA's motion for summary judgment.

Finally, we note that the district court did not abuse its discretion in denying Wayton's motion for additional time to conduct discovery under Rule 56(f).

9

Although Wayton alleges that he needed access to the Pension Trust's "interpretive Q&As" and the redacted files of similarly situated pensioners, he fails to indicate how this information would have aided him in establishing the necessary causal connection between his work-related injuries and his disability.  *See Barfield v. Brierton*, 883 F.2d 923, 931 (11th Cir. 1989) ("The nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but must show the court how the stay will operate to permit him to rebut, through discovery, the movant's contentions.").

**AFFIRMED.**